UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 96 CR 553-1 |
| | ) | |
| JAMES GHOLSON | ) | Judge Rebecca R. Pallmeyer |
| | ) | |

## MEMORANDUM OPINION AND ORDER

A jury convicted James Gholson of engaging in a Continuing Criminal Enterprise [427], and Judge George Marovich of this court sentenced him to life in prison [509]. Gholson now moves [1062,1079[1]] for a reduction of his sentence pursuant to section 404 of the First Step Act of 2018. For the reasons stated herein, his motion is entered and continued pending further review of his disciplinary and medical records.

## BACKGROUND

On May 22, 1997, a grand jury returned a 15-count Superseding Indictment charging James Gholson and seven other defendants with violations of 21 U.S.C. §§ 841(a)(1), 843(b), 846, 848(a), 853, 861, and 18 U.S.C. § 922(g). (Superseding Indictment [23] at 1.) In Count 2 of the Indictment, Gholson was charged with engaging in a Continuing Criminal Enterprise ("CCE") due to his involvement with the Gangster Disciples from the mid-1980s to 1997, in violation of 21 U.S.C. § 841(a). (*Id.* at 10-12.) In August 1998, a jury found Gholson guilty of engaging in a CCE (Count 2), and also guilty of a narcotics conspiracy (Count 1) and using a person under 18 years of age to engage in, and shield himself from, the narcotics conspiracy (Counts 3 and 4). (Gholson Jury Verdict [427] at 1.) On January 8, 1999, Judge Marovich sentenced Gholson to life in prison on the CCE count. (Sentencing Order [509] at 2.)

---

[1] Gholson has filed a *pro se* motion [1062] seeking the same relief and making largely the same arguments. The court resolves both motions with this ruling.

Section 848(c) of Title 21 defines a CCE, stating that "[f]or purposes of subsection (a), a person is engaged" in a CCE if:

> (1) he violates any provision of this subchapter or subchapter II the punishment for which is a felony, and
>
> (2) such violation is part of a continuing series of violations of this subchapter or subchapter II—
>
>> (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
>>
>> (B) from which such person obtains substantial income or resources.

21 U.S.C. § 848(c). Subsection (a)—referenced in the introduction to subsection (c) and listed in the indictment sets forth the penalty for engaging in a CCE: "[a]ny person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment." § 848(a). In returning a guilty verdict on Count 2, the jury found that Gholson committed a felony as part of a continuing series of violations, in concert with five or more persons, where Gholson was an organizer, supervisor, or held another managerial position, and from which Gholson obtained substantial income or resources. The statutorily imposed penalty for such a verdict is 20 years to life in prison.

At Gholson's sentencing, the court considered the provisions of § 848(b), which mandates a life sentence if certain additional criteria are met. Specifically, a person engaging in a CCE shall be imprisoned for life if

> (1) such person is the principal administrator, organizer, or leader of the enterprise or is one of several such principal administrators, organizers, or leaders; and
>
> (2)
>> (A) the violation referred to in subsection (c)(1) involved at least 300 times the quantity of a substance described in subsection 841(b)(1)(B) of this title, or
>>
>> (B) the enterprise, or any other enterprise in which the defendant was the principal or one of several principal administrators, organizers, or leaders, received $10 million dollars in gross receipts during any twelve-month

2

>     period of its existence for the manufacture, importation, or distribution of a
>     substance described in section 841(b)(1)(B) of this title.

21 U.S.C. § 848(b). At the outset of the sentencing proceedings, Judge Marovich observed that "while conviction depends upon proof beyond a reasonable doubt, sentencing depends on proof by a preponderance of the evidence. And the Court will make that determination as part of its finding as to the amount and kind of controlled substance attributable to each defendant." (Sentencing Tr. [557] at 6:21-25.)

Judge Marovich considered the provisions of § 848(b) in reverse order. Regarding the profitability of the enterprise (relevant to section (2)(B)), the court did not make a specific finding for Gholson but stated that "$300,000 a day," or "109 million annually," was "credible." (*Id.* at 63:9-21.) Those numbers were based on evidence submitted at trial, which the court recognized may have been "exaggerated." But there was ample room for error, given that $109 million "is ten or eleven times the amount which triggers the alternate threshold" in § 848(b). (*Id.* at 63:9-12.)

Regarding section (2)(A), at the time of Gholson's sentencing, the quantities of crack and powder cocaine that would violate § 841(b)(1)(B) were 5 grams and 500 grams respectively. 21 U.S.C. § 841 (1994). Multiplying each of those by 300 to reach the quantity necessary for a mandatory life sentence under § 848(b), the court stated that "the magic number is 1.5 kilograms of crack or 150 kilograms of powder." (Sentencing Tr. at 64:4-5.) The court did not make a specific drug quantity determination for Gholson but noted that based on the evidence presented at trial, "you have [distributed] up to 720 times as much crack" (1080 kilograms) and "360 times as much powder" (54,000 kilograms) as was necessary under the statute. (*Id.* at 64:17-65:8.) The court noted that "[t]here's a lot of room for error in those numbers." (*Id.* at 65:9-10.) Not needing to find anything more at the time, the court concluded "that at least 1.5 kilograms of crack or 150 kilograms of powder are attributable to Gholson." (*Id.* at 66:11-12.)

Regarding section (1), the court recognized that "there is a difference between saying somebody is an organizer, supervisor or manager," as the jury did when it found Gholson guilty of engaging in a CCE under 848(c), and "that such a person is a principal administrator . . . or one of several such principal administrators, organizers or leaders, which is the language of 848(b)." (*Id.* at 67:6-15.) "[I]n order to give meaning to the phrase 'principal administrator,'" the court continued, it must have "some meaning over and above" that of a "supervisor or manager." (*Id.* at 67:17-19.) Since Gholson had the "autonomy and authority" to be one of "the top leaders," he qualified both as a supervisor *and* as a principal administrator, thus "meet[ing] the criteria of 21 U.S.C. 848(b), and life imprisonment is the mandated sentence." (*Id.* at 68:2-17.) Following this determination, the court granted the Government's motion to dismiss all counts besides the CCE count, and sentenced Gholson to a term of life. (*Id.* at 69:12-21.)

On February 20, 2001, the Seventh Circuit affirmed Gholson's conviction and sentence on direct appeal. *United States v, Wilson*, 237 F.3d 827 (7th Cir. 2001). In the years since, Gholson has filed numerous motions challenging this outcome, including a motion for post-conviction relief pursuant to 28 U.S.C. § 2255 and at least eleven other motions seeking a reduction of his sentence. (*See* Order as to Gholson's Mot. for Sentence Reduction [1014] at 1.) All of those motions have been denied. (*Id.*)

In 2010, eleven years after Gholson was sentenced, Congress passed the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372, which changed the quantities of crack cocaine that triggered certain penalties of imprisonment. For crack offenses committed prior to 2010, the statute had called for a penalty of 10 years to life for a defendant with a prior felony conviction found to have distributed 5 or more grams. 21 U.S.C. § 841(b)(1)(B) (1994). Section 2 of the Fair Sentencing Act set the quantity of crack that triggered such a penalty at 28 or more grams. *See* 21 U.S.C. § 841(b)(1)(B). Section 2 was prospective only, and thus not applicable to a defendant like Gholson. *See United States v. Bell*, 624 F.3d 803, 814 (7th Cir. 2010). But in 2018, Congress passed the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194, and section

4

404(b) of that Act made section 2 of the Fair Sentencing Act retroactively applicable to defendants who committed an offense prior to 2010. Specifically, the First Step Act permits a court to reduce a defendant's sentence for a "covered offense," defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." First Step Act, § 404(a).

Gholson now argues that he is eligible for a reduction of his sentence because his CCE conviction was a "covered offense" under the First Step Act. (Gholson Mot. for Relief Under the First Step Act [1079] (hereinafter "Gholson Mot.") at 3.) The Government argues that Gholson's conviction was not a covered offense, and that the court should decline to reduce Gholson's sentence even if it finds him eligible. (Govt. Resp. in Opp'n [1090] (hereinafter "Govt. Resp.") at 8-9.) For the reasons stated herein, Gholson's motion is entered and continued pending further review.

## DISCUSSION

### A. Covered Offense

The Government argues that the First Step Act conditions eligibility for a sentence reduction "not on the statutes that defendant violated, but on the specific 'violation' that he 'committed.'"[2] (*Id.* at 14.) The Government thus urges that in order to determine eligibility for First Step Act relief, the court must inquire into the facts specific to the defendant's offense, including the actual quantity of crack attributed to him. (*Id.* at 15-16.) And if—as the Government argues is true here—the quantity of drugs attributed to the defendant is higher than both the pre- and post-Act thresholds, then the defendant's sentence was not based on a "covered offense" and thus cannot be reduced. (*Id.* at 16.) Among other justifications for its argument, the

---

[2] Confoundingly, the Government made the opposite (and correct) point in its opening remarks in this same brief, noting that "the Seventh Circuit issued a decision in *United States v. Shaw*, 957 F.3d 734, 736 (7th Cir. 2020), which held that 'covered offense' refers to a defendant's statute of conviction, rather than the quantities of crack actually involved in the offense." (Govt. Resp. at 7.)

Government claims that this construction of the First Step Act is consistent with congressional intent because it avoids certain potential sentencing disparities: specifically, under a broader understanding of "covered offense," a person sentenced before 2010 for distribution of a high quantity of crack may be eligible for a sentence reduction, while a person sentenced after 2010, for distributing the same quantity, is not. (*Id.* at 17.) This "asymmetry," the Government says, would turn the First Step Act's purpose of "reconcil[ing] the disparity between those sentenced . . . on its head to afford defendant the windfall of a sentence reduction." (*Id.* at 17, 20.)

Gholson contends that "[t]he actual quantities of crack involved in the case do not matter for the purposes of determining eligibility for a reduction under the statute." (Gholson Reply [1091] at 7.) The Seventh Circuit has now reached the same conclusion. In *United States v. Shaw*, the court considered facts similar in important respects to Gholson's case. The defendants in *Shaw* were convicted—prior to 2010—of crack cocaine offenses, and as each possessed around 30 grams, those offenses triggered the penalties imposed by 21 U.S.C. § 841(b)(1)(B). *United States v. Shaw*, 957 F.3d 734, 738 (7th Cir. 2020). As noted, the Fair Sentencing Act raised, from 5 grams to 28 grams, the quantity of crack cocaine that triggers a 10 years-to-life sentence. Thus, the defendants exceeded the (b)(1)(B) threshold quantity regardless of whether the pre-Act or post-Act number was applied. As in the case before this court, the Government argued in *Shaw* that the specific quantity of drugs attributable to defendants precluded First Step Act eligibility. *Id.* at 738. The Court of Appeals disagreed. It concluded that "the statute of conviction alone determines eligibility for First Step Act relief," and that the "offenses are 'covered offenses' under the plain language of the First Step Act because the Fair Sentencing Act modified the penalties for crack offenses as a whole, not for individual violations." *Id.* at 739.

Like the defendants in *Shaw*, Gholson "committed a crack-cocaine offense before [the date of the Fair Sentencing Act on] August 3, 2010, and the penalty for [that crime] was modified by the Fair Sentencing Act." *Id.* at 739-40. At sentencing, the court imposed a life sentence

6

because it found that Gholson's criminal activity involved at least 300 times the quantity of a substance described in 21 U.S.C. § 841(b)(1)(B). The Fair Sentencing Act increased the threshold quantity of crack-cocaine under § 841(b)(1)(B), which thereby increased the quantity that would trigger a life sentence for a CCE conviction. Even assuming, as the Government argues, that this increase would have made no difference in Gholson's case—because the quantity of drugs attributable to him is far too high for the change to be relevant—*Shaw* instructs that "the statute of conviction alone determines eligibility for First Step Act relief." *Shaw*, 957 F.3d at 739. Thus, Gholson committed a "covered offense," and the First Step Act permits the court to consider a reduction of his sentence.

**B.     Factors to Apply in Consideration of a Sentence Reduction**

The parties disagree over which factors should guide the court's consideration of Gholson's motion. As both the Government (Govt. Resp. at 24-25) and Gholson (Gholson Mot. at 6) recognize, the factors in 18 U.S.C. § 3553(a), including the "history and characteristics of the defendant," are important considerations for this inquiry. *See United States v. Hudson*, 967 F.3d 605, 609, 612 (7th Cir. 2020) (citing *Shaw*, 957 F.3d at 741-42). The Seventh Circuit further clarified that factors such as "new statutory minimum or maximum penalties; current Guidelines; post-sentencing conduct; and other relevant information about a defendant's history and conduct" are part of the consideration. *Id.* at 609. However, the Government disagrees with Gholson's contention that the court must also consider "the current state of the law," including Supreme Court precedents such as *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013). (*See* Gholson Mot. at 6; Govt. Resp. at 8.)

*Apprendi* and *Alleyne* affirmed a defendant's Sixth Amendment right to a jury trial in specific contexts. In *Apprendi*, the court held that, "[o]ther than a fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. The statutory scheme under consideration by the *Apprendi* Court allowed a judge—after a jury

7

convicted the defendant of an offense based on their finding certain facts beyond a reasonable doubt—to "enhance" that sentence beyond the maximum allowed by the statute, based solely on the judge's own finding of certain facts by a preponderance of the evidence. *Id.* at 470, 491. The Court held that "this practice cannot stand" in light of the Constitution's protections for criminal defendants. *Id.* at 492. In *Alleyne*, the Court applied the reasoning from *Apprendi* and held that the Sixth Amendment similarly requires that any fact increasing the mandatory minimum sentence for a crime be submitted to a jury. *Alleyne*, 570 U.S. at 108. As Gholson notes, while a jury convicted him of engaging in a CCE under 21 U.S.C. § 848(a), it was the judge who determined—by a preponderance of the evidence—that a mandatory life sentence was required under § 848(b). (Gholson Mot. at 2.)

In his argument on this issue, Gholson cites *United States v. Haymond*, 139 S. Ct. 2369, 2379 (2019), a case in which a judge found defendant guilty of a supervised release violation and sentenced him to a five-year prison term. Vacating that judgment, which the judge entered based on a preponderance of the evidence, a plurality of the Court stated that a post-judgment sentence modification must adhere to the principles explained in *Apprendi* and *Alleyne*. *See Haymond*, 139 S. Ct. at 2379. But the controlling opinion—Justice Breyer's concurrence—was narrow in scope; it held that the specific section of code under consideration, which purported to be part of a supervised-release statutory scheme, was unconstitutional because it "more closely resemble[d] the punishment of new criminal offenses, but without granting a defendant the rights, including the jury right, that attend a new criminal prosecution." *Id.* at 2386 (Breyer, J., concurring). Gholson's motion does not concern supervised release, and he has not explained how the controlling opinion bears on sentence reductions under the First Step Act.

More significantly, Gholson's argument ignores controlling authority on the retroactive applicability of *Apprendi* and *Alleyne*. In *Curtis v. United States*, 294 F.3d 841, 842 (7th Cir. 2002),

8

the court held that *Apprendi* did not apply retroactively on collateral review, and in *Crayton v. United States*, 799 F.3d 623, 625 (7th Cir. 2015), the court held the same for *Alleyne*.[3]

### C. Gholson's Sentence

The jury convicted Gholson of engaging in a CCE under § 848(a), and his term of life imprisonment is statutorily authorized by that subdivision. The First Step Act nevertheless permits this court to consider reducing Gholson's sentence. Gholson argues that his "age, family connections, and programming history merit" such a reduction. (Gholson Mot. at 11.) Gholson appends several letters from family and friends that attest to his rehabilitation in prison and the desire many have to reconnect with him as a free man. (*Id.* at 12-14.) He also includes exhibits documenting the coursework and other programs he has taken part in since he began his incarceration. (*Id.* at 14-15.) Further, Gholson claims that he no longer has any connections with the Gangster Disciples, and that at age 53, he has gone through a "personal transformation." (Gholson Reply at 11.) The court has reviewed these and other documents in the record.

In objecting to this motion, the Government contends that "[i]t is difficult to overstate the seriousness of defendant's offense conduct when viewed through the lens of the [Gangster Disciple's] iron grip on many communities in Chicago that were ravaged with drugs and gang violence." (Govt. Resp. at 24.) As discussed, the sentencing court found—albeit only by a

---

[3] Gholson's only authorities in support of his retroactivity argument are unpublished district court opinions from outside this circuit. (Gholson Mot. at 6-8.) In any event, as the Government observes, *Apprendi* would not be relevant to Gholson's claim because "a lawful punishment for *every* CCE conviction is life in prison." *See United States v. Hoover*, 246 F.3d 1054, 1058 (7th Cir. 2001). That is, the life term imposed by § 848(b) does not increase the maximum punishment already authorized by the jury under § 848(a), because the latter also includes a life term. The Government argues that *Alleyne* is similarly irrelevant to CCE convictions, but that argument is less persuasive. While §§ 848(a) and (b) carry the same maximum punishment, they do not carry the same minimum. *See United States v. Smith*, 223 F.3d 554, 565-66 (7th Cir. 2000) (contemplating, post-*Apprendi* but pre-*Alleyne*, the protections of the Sixth Amendment when a judge applies § 848(b) after a jury convicts under § 848(a)). *Alleyne* might thus be applicable to Gholson's CCE conviction, but he cannot escape the fact that *Alleyne* does not apply retroactively. *See Ellis v. Werlich*, No. 16-3680, 2017 WL 4785963, at *1 (7th Cir. May 2, 2017) (affirming the district court's decision to deny review of defendant's CCE conviction because "the Supreme Court did not make *Alleyne* retroactive on collateral review").

preponderance of the evidence—that Gholson and other defendants were moving quantities of drugs and money that far exceeded the amounts contemplated by the relevant statutes. Moreover, the court found that Gholson was a principal administrator of the gang, acting with autonomy and authority that was indicative of a top leader.

Gholson's offense was, indeed, serious—and he has spent the last quarter-century in prison because of it. Beyond noting the seriousness of the offense, the Government simply states that "[t]he need for a sentence that promotes specific deterrence and protects the public from defendant remains as strong today as it was at the time of defendant's sentencing in 1999." (Govt. Resp. at 25.) But the Government does not explain its reasoning beyond asserting that Gholson still has an influential role with and among the Gangster Disciples—an assertion that Gholson denies. And Gholson's numerous submissions to the court suggest that the deterrence rationale no longer applies today as it did in 1999. Gholson proposes that through his mentorship and personal testimony once outside of prison, he can effectively deter others from making the mistakes he made. (*See, e.g.*, Gholson pro se Mot. for Relief Under the First Step Act [1062] at 56, 60, 68; Letter from David Benifield, Ex. 14 to Gholson Mot. [1079-14] at 1; Letter from Monk Silas, Ex. 15 to Gholson Mot. [1079-15] at 1.)

The court's recent order reducing the sentence of another former Gangster Disciples leader, cited by Gholson in his motion, is worth mentioning here. In granting that defendant's First Step Act motion, the court stated:

> Mr. Yates has already been in custody for nearly twenty-five years, and he appears to have used that time productively. Mr. Yates also indicates that he will have the support of family and friends upon his release, and the government offers no concrete reason to believe that he continues to pose a threat to the community.

*United States v. Yates*, No. 95-CR-510-18, Dkt. #2061. The reasoning in that ruling may be relevant here, as well. At this time, however, the court is unable to rule on Gholson's motion. As noted, an important factor for the court when imposing or reviewing a sentence is "the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). One helpful indication of Gholson's

character is his record of disciplinary history (if any) while in custody. In addition, in his submissions to the court [1098, 1099], Gholson details several of his chronic medical issues, as well as the troubling news that many family members are battling the COVID-19 virus. Before making a final decision on this motion, the court directs the government to furnish Gholson's disciplinary records, as well as his medical records, under seal. Gholson's filing of this motion is deemed a limited waiver of his right to confidentiality in those records.

## **CONCLUSION**

For the foregoing reasons, Mr. Gholson's motions [1062, 1079] are entered and continued pending review of his disciplinary records while in custody as well as his medical records. The Government is directed to provide such records, if any, to the court within 14 days.

ENTER:

Dated: November 12, 2021

_____
REBECCA R. PALLMEYER
United States District Judge