UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 96-CR-553-1 |
| JAMES GHOLSON, | ) ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

In 1998, James Gholson was convicted of engaging in a Continuing Criminal Enterprise ("CCE") and sentenced to life in prison because of his leadership role in a drug trafficking operation. Now 56, Mr. Gholson has now been incarcerated for more than 26 years.[1] In November 2019, Mr. Gholson first moved for a reduced sentence under Section 404 of the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (2018). The court previously found Gholson eligible for resentencing under the Act but entered and continued his motion pending review of Gholson's disciplinary and medical records. (Order [1100] at 6–7, 9–11). Having now reviewed those records—and for the reasons discussed below—Mr. Gholson's motion is granted, and his sentence is reduced to time served as of January 27, 2023.

## BACKGROUND

In May 1997, a grand jury returned a 15-count Superseding Indictment [23] charging James Gholson and several other defendants with a range of criminal conduct.[2] Relevant here, Gholson was charged with engaging in a CCE under 21 U.S.C. § 841(a) because he held a leadership position in a gang that trafficked large quantities of illegal drugs. (Superseding Indictment at 10–12.) In August 1998, a jury convicted Gholson of that charge, among others

---

[1] Mr. Gholson has been detained since the time he was arrested in 1996 [6].

[2] Because the court reviewed this case's procedural history in detail in its earlier Order on Mr. Gholson's motion [1100], it provides an abridged recitation here.

[427]. At sentencing, the Government dismissed the non-CCE charges on which Gholson was convicted and Judge George Marovich of this court sentenced Gholson to life in prison [509].

To convict Gholson of engaging in a CCE, the jury must have found that he had undertaken a "continuing series of violations . . . in concert with five or more other persons" in a "position of organizer, a supervisory position, or any other position of management" from which he "obtain[ed] substantial income or resources." 21 U.S.C. § 848(c)(2). The penalty for engaging in a CCE is 20 years to life in prison, both now and at the time of Gholson's conviction. *Id.* § 848(a). But under Section 848(b), the court must impose a mandatory life sentence if the defendant was the "principal administrator, organizer, or leader" of an enterprise that involved more than a certain quantity of crack cocaine or "received $10 million dollars in gross receipts during any twelve-month period of its existence" derived from distributing cocaine or other drugs.

The jury did not make any Section 848(b) findings of fact. Instead, at Gholson's sentencing, Judge Marovich himself determined "by a preponderance of the evidence" that the amount of crack cocaine trafficked by Gholson's enterprise easily cleared both the quantity and gross receipts thresholds.[3] (Sentencing Tr. [557] at 5:21–25, 61:13–64:17.) Judge Marovich based his findings on evidence submitted at trial, which he recognized may have been "exaggerated." (*Id.* at 62:1–2.) But because he found that Gholson's enterprise trafficked hundreds of times more crack and took in ten or eleven times the revenue necessary for a life sentence under the statute, he reasoned that there was ample room to adjust for exaggeration while still meeting the statutory threshold. (*Id.* at 61:13–64:17.) Judge Marovich also found that Gholson was a "top leader" of that enterprise—indeed, he was among the "highest level of management in the gang"—which qualified him as a "principal administrator" under Section

---

[3] Since the time of Mr. Gholson's sentencing, the Supreme Court has determined that such a finding must be made by a jury, upon proof beyond a reasonable doubt, if it increases a mandatory minimum sentence, as was the case here. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Alleyne v. United States*, 570 U.S. 99, 108 (2013).

848(b). (*Id.* at 66:6–67:17.) Because Judge Marovich found Gholson met all the statutory requirements, he sentenced Gholson to a mandatory term of life. (*Id.* at 68:12–21.)

More than a decade after Gholson was sentenced, Congress passed the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372, which reduced sentencing disparities between crack and powder cocaine by increasing the quantity of crack cocaine required to trigger certain mandatory minimums. But the Fair Sentencing Act did not apply retroactively to a defendant like Gholson. *See United States v. Bell*, 624 F.3d 803, 814 (7th Cir. 2010). In 2018, Congress passed the First Step Act and, in doing so, made the Fair Sentencing Act retroactively applicable to defendants who committed a "covered offense." Pub. L. No. 115-391 § 404(a).

Gholson has moved for a reduction of his sentence. (*See* Gholson Mot. [1079].) The Government opposes that motion; the Governments contends that Gholson's CCE conviction was not a "covered offense" under the Act because Gholson would have received a mandatory life sentence even under the thresholds set by the Fair Sentencing Act. (Govt. Opp. [1090] at 14–16.) In its earlier ruling, this court rejected that argument and found Gholson eligible for resentencing, but entered and continued the motion pending review of Gholson's disciplinary and medical records. (Order [1100] at 6–7, 9–11). The government has provided those records [1101–02, 1106–09] and Gholson, at the court's direction [1110, 1112] has proposed details concerning his living arrangements should he be released [1113]. The court has now had the opportunity to review the relevant materials.

## **DISCUSSION**

Under the First Step Act, the court may—but is not required to—resentence a defendant who committed a "covered offense" prior to August 3, 2010. *See* Pub. L. No. 115-391 § 404(a)-(c). The court previously determined that Gholson committed a covered offense prior to that date. (Order at 6–7.) Because the statutory range for engaging in a CCE is 20 years to life imprisonment—and because Gholson has already served more than 20 years—the court can maintain Gholson's current life sentence or exercise its discretion to resentence Gholson to any

3

term, including time served.[4] In considering whether to exercise that discretion, the court looks to the factors in 18 U.S.C. § 3553(a), including the "history and characteristics of the defendant." *See United States v. Hudson*, 967 F.3d 605, 609, 612 (7th Cir. 2020).

Notably, the Seventh Circuit has held that "post-sentencing conduct" is relevant to this inquiry and "can inform a court in carrying out its duty to impose a sentence sufficient, but not greater than necessary to comply with the sentencing purposes set forth in § 3553(a)." *Id.* at 613; *see also United States v. Young,* No. 97-CR-63-1, 2019 WL 6918279, at *3 (N.D. Ill. Dec. 19, 2019) ("Evidence of post-sentencing rehabilitation 'may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing'") (quoting *Pepper v. United States*, 562 U.S. 476, 491 (2011)).

Mr. Gholson asserts that his age, "his strong and continuing family connections," the improbability that he will recidivate in his 50s, and his "success in redirecting his life while incarcerated and without an incentive to do so" all support a reduction in his sentence. (Gholson Mot. at 10.) Gholson also notes that he has a large family who "would like the opportunity to support" his re-entry into society and family life. (*Id.* at 12.) The Government, for its part, mustered little more than reflexive opposition. It says only that Gholson's criminal history and conduct "counsel strongly against any reduction in his sentence" because it is "difficult to overstate the seriousness of defendant's offense conduct when viewed through the lens of the GD's iron grip

---

[4] As discussed above, Judge Marovich made findings of fact that converted Gholson's mandatory twenty-year sentence to a mandatory life sentence. But the court is not bound by those findings. Since the time Gholson was sentenced, the Supreme Court has held that a jury must make the kind of factual findings made in this case by Judge Marovich. *See Apprendi*, 530 U.S. at 490; *Alleyne*, 570 U.S. at 108. Though the Supreme Court's decisions in *Apprendi* and *Alleyne* do not apply retroactively, *see Crayton v. United* States, 799 F.3d 623, 625 (7th Cir. 2015), the court is not engaged in a retroactive adjustment of Gholson's sentence, but a resentencing as of the date of this order. *See Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022) (holding that "the First Step Act allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act"). Accordingly, the court is free to consider the Supreme Court's more recent jurisprudence and adhere to that logic in its resentencing decision.

on many communities in Chicago that were ravaged with drugs and gang violence." (Govt. Opp. at 24.)

This court recognizes that Gholson was convicted of a serious offense and that the Gangster Disciples' activities were violent and destructive. Street gang activity, including drug trafficking, remains a scourge. But reliance on the seriousness of Gholson's initial offense alone to justify continued incarceration may be inconsistent with the First Step Act, which makes the Fair Sentencing Act retroactive.

The Government protests that the "need for a sentence that promotes specific deterrence and protects the public from defendant remains as strong today as it was at the time of defendant's sentencing in 1999." (Govt. Resp. at 25.) Gholson's offense conduct does remain a relevant consideration. But in enacting the First Step Act, Congress recognized that even people convicted of serious drug offenses warranted a second look. A second look does not necessarily mean that the court should impose a different sentence, but the Government here has offered little reason to impose another life sentence beyond asserting—without evidence—that Mr. Gholson is "influential" in and connected to his former gang. (*Id.*) On the other hand, Mr. Gholson's age makes it less likely that he will recidivate, meaning there is less value in keeping him incarcerated. *See United States v. Johnson*, No. 01 CR 543, 2019 WL 2590951, at *4 (N.D. Ill. June 24, 2019) (recidivism "begins to decline substantially" at age 50) (quoting *United States v. Tucker*, 356 F. Supp. 3d 808, 810 (S.D. Iowa 2019)).

The court is also not moved here by the Government's contention that it is "critical" for "general deterrence" to maintain Gholson's current sentence. (*Id.*) Even aside from scholarship suggesting that excessively long sentences serve little deterrent effect,[5] the court finds it difficult to imagine a would-be criminal deterred by a life sentence, yet undeterred by the prospect of a

---

[5] *See, e.g.*, Athula Pathinayake, *Should We Deter Against General Deterrence?*, 9 WAKE FOREST J.L. & POL'Y, 63, 80–81 (2010) ("Empirical data shows that punishment [is] most effective as a deterrent only when it is proportional to the crime, with excessive or deficient sentences demonstrating unreliable deterrent effects.")

5

quarter of a century in prison. There is no dispute that a lengthy sentence was justified here. But in a significant number of drug trafficking cases, a life sentence may be greater than necessary to achieve the goals of sentencing. Gholson has now served more than 26 years, which the court believes is sufficient for general deterrence.

Unlike the Government's general objections, the evidence specific to Mr. Gholson suggests that he has made major strides while incarcerated despite his troubling history. Gholson's letter to this court reflects genuine contrition about the harm his criminal behavior caused to his family and his community [1079-4]. In his letter, Gholson apologizes to the government, his victims, and his family for the "destructive behavior that [he] took part in." (*Id.*) Gholson writes that he is "ashamed for the pain and suffering that [he] took part in causing within [his] own community," which he hopes some day "to help repair" by engaging with gang outreach programs. (*Id.*) Gholson has also made good use of his time away. He explains that, although prisoners serving life sentences are often passed over for programming, he personally has managed to earn a GED, dozens of college credits, and several occupational accreditations. (*Id.*; *see also* [1079-10 (reflecting GED received in 2009)]; [1079-11, 1079-12, 1079-13 (reflecting various certificates earned by Gholson)].)

Further, disciplinary records supplied by the Government show that Mr. Gholson has not been in trouble since February 2004, more than 18 years ago [1102]. Given the violent nature of many prisons, Gholson's disciplinary record is commendable. Particularly noteworthy are two letters Gholson supplied from prison officials. In one, Housing Captain Hext at the Arkansas Valley Correctional Facility characterizes Gholson as a "trusted resource," a "model prisoner," and "a mature man who . . . is worthy of consideration" [1117-1]. Hext reports that Gholson "has become a mentor to younger offenders" and "has been instrumental in stopping violence before it can begin as well as calming prison tension." (*Id.*) Hext writes that, in his view, Mr. Gholson "will become a valued member of his community" if this court gives him that chance. (*Id.*)

6

Gholson's case manager at Arkansas Valley, Mr. Huertas, offered similar observations. Huertas describes Gholson as "consistently polite and respectful" and notes that Gholson has long lived in the "Incentive Living Program," which is designed to reward prisoners who stay out of trouble [1117-2]. Huertas says that Gholson is "pleasant and mature," "has a great attitude," and "has earned [his] respect for maintaining his conduct, positive attitude and commitment to work while in prison." (*Id.*)

Mr. Gholson also has support among family and friends in the community who are prepared to help Gholson when he is released. Gholson's son, for example, writes that he looks forward to his father returning home so son and father can "reestablish the connection and bond" that Gholson's son missed as a child and to enable him to become a better father for his own children [1079-5]. Gholson's aunt, Evelyn Massey, wrote to the court in support of his release and offered her home in Chicago as a place for Mr. Gholson to live [1079-7]. Others, like Army Captain Drake D. Booker—a mentee of Mr. Gholson's who credits Gholson for his success in life—speak to Gholson's contributions as a mentor in a community that has a "need for more men to step up" to help children "born into [a] situation where the odds are heavily stacked against them" [1079-8].

Indeed, Mr. Gholson reports options for housing and work, should he be released. As she explained in her letter, Gholson's aunt Ms. Massey can offer Gholson a spare bedroom in her home, where he would not have access to firearms [1113-1]. Alternatively, Gholson's sister, who lives in Danville, is likewise willing to house Gholson in her weapons-free home. (*Id.*) Gholson hopes to be employed in the restaurant industry, and to that end plans to finish the few remaining courses necessary for him to earn a culinary arts certificate at Danville Community College. (*Id.*) If that does not work out, Gholson's brother-in-law is willing to help Gholson obtain a job at the manufacturing plant in Danville where he works. (*Id.*)

Finally, the court has reviewed Mr. Gholson's submissions and records related to his health, which further support his release. Gholson asserts that he suffers from extremely high

7

blood pressure and severe gout [1114]. According to his attorney, Gholson has frequently experienced shortness of breath and "is afraid he may have contracted COVID once again" [1116].[6] Mr. Gholson's health challenges—including diabetes, uncontrolled hypertension, gout, chronic cough, and occasional shortness of breath—are corroborated by the medical records the Government submitted. (*See generally* [1107-1109]). While prison is a challenging environment for anyone, it poses extra risk to Mr. Gholson, especially given the ongoing nature of the COVID pandemic and his extreme hypertension.[7]

Considering the factors in 18 U.S.C. § 3553, the court concludes that a sentence of time served—with a short delay so that probation can set the terms of release—is sufficient but not greater than necessary. Mr. Gholson has been detained since September 1996, more than 26 years ago. (*See* [6] (ordering Gholson detained pending further hearings on September 13, 1996)].) This is the equivalent, for federal sentencing purposes, of a 30-year sentence—one that certainly reflects the "seriousness" of Gholson's offense and is also more than sufficient for deterrent purposes. *See* 18 U.S.C. § 3553(a)(2)(A)–(B). Because of his crimes, Mr. Gholson has suffered dearly. He did not watch his children grow up, has not met his grandchildren, and missed the funerals of his grandparents, mother, stepfather, and sister.

As discussed above, Mr. Gholson has now been provided with "needed education" and "vocational training" and, in the court's view, no longer needs to be incarcerated to "protect the

---

[6] Mr. Gholson first had COVID-19 in December 2020. (*See* [1109] at 10.) Gholson's attorney reported in August that he has had a "persistent cough for which he has been unable to obtain a diagnosis" and that Gholson "has been experiencing shortness of breath" [1116]. Mr. Gholson's medical records confirm complaints about a persistent cough. (*See* [1109] at 24, 35, 55, 59, 71, 87.) In the medical records provided to the court, the latest date of service is October 2021, meaning that the court cannot evaluate Gholson's health as of this order. (*Id.* at 87.)

[7] Mr. Gholson's blood pressure is, as his counsel suggests, "extremely high" [1116]. Gholson's most recent blood pressure readings average 170 over 109, with systolic readings ranging from 146 to 196 and diastolic readings ranging from 92 to 136. (*See* [1109] at 15, 20, 24, 31, 36, 53, 60, 64, 65, 77, 78, 79, 88.) For context, the National Institute of Health considers anyone with systolic pressure above 130 or diastolic pressure over 80 to have "high blood pressure." *See* https://www.nhlbi.nih.gov/health/high-blood-pressure (last accessed Dec. 12, 2022).

public from further crimes of the defendant." *Id.* § 3553(a)(2)(C)–(D). Finally, while the "history and characteristics of the defendant" may have warranted a life sentence more than two decades ago, they no longer do. By all accounts, Mr. Gholson has used his time in prison to better himself. The letters from family, friends, mentees, and prison officials attest that Gholson's claims of rehabilitation amount to more than mere words.

Mr. Gholson tells the court that it will "not regret granting this motion" [1079-4]. After 26 years in prison, he deserves the chance to make good on that promise.

## **CONCLUSION**

For the foregoing reasons, Gholson's motions to reduce his sentence under the First Step Act [1062, 1079, 1116] are granted. Gholson's remaining motions [1096, 1098, 1113, 1114, 1115, 1117] are terminated as moot. The court reduces Gholson's sentence from a term of life to time served as of January 27, 2023. The court leaves intact Gholson's 10-year period of supervised release and directs the Probation Office promptly to evaluate whether any additional conditions are needed to help Mr. Gholson be safely reintegrated into the community.

ENTER:

Dated: December 14, 2022

REBECCA R. PALLMEYER
United States District Judge